People v Blair (2020 NY Slip Op 03430)





People v Blair


2020 NY Slip Op 03430


Decided on June 18, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 18, 2020

111202

[*1]The People of the State of New York, Respondent,
v
Russell Blair Jr., Appellant.

Calendar Date: May 20, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Devine and Colangelo, JJ.


Steven M. Sharp, Albany, for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered May 19, 2019 in Albany County, upon a verdict convicting defendant of the crime of patronizing a person for prostitution in the second degree.
In December 2017, various officers and agents from the Federal Bureau of Investigation (hereinafter the FBI), the New York State Police and the Albany County Sheriff's Department organized an undercover operation to apprehend individuals seeking to engage in sex acts with minors. As part of this operation, an investigator with the State Police (hereinafter the State Police investigator) placed an advertisement on Craigslist, which stated that two sisters were in the area and were seeking a man "for a good time." The advertisement included body photos of a female FBI agent (hereinafter the FBI agent) and a female investigator with the Albany County Sheriff's Department (hereinafter the sheriff's investigator), who posed as the sisters. Defendant called the number listed in the advertisement and briefly spoke with the FBI agent, who told him that she was 19 years old and her sister was 14 years old. Defendant continued to converse with the State Police investigator through text messages, until he ultimately arrived at a hotel in Albany County, in which he met and spoke with the sheriff's investigator, who was posing as the older sister. Defendant was thereafter arrested and charged in a two-count indictment. Following a jury trial, he was convicted of patronizing a person for prostitution in the second degree and acquitted on the other charge. He was sentenced to a prison term of two years, followed by 10 years of postrelease supervision. Defendant appeals.
Defendant first challenges the legal sufficiency and the weight of the evidence supporting the conviction. "In reviewing a legal sufficiency claim, this Court must, viewing the evidence in the light most favorable to the People, evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusions reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime[] charged" (People v Colon, 177 AD3d 1086, 1087 [2019] [internal quotation marks, brackets and citations omitted]; see People v Bleakley, 69 NY2d 490, 495 [1987]). In a weight of the evidence review, if a different verdict would not have been unreasonable, this Court must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Mamadou, 172 AD3d 1524, 1524 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 1106 [2019]; see People v Danielson, 9 NY3d 342, 348 [2007]). "A person is guilty of patronizing a person for prostitution in the second degree when, being [18] years old or more, he or she patronizes a person for prostitution and the person patronized is less than [15] years old" (Penal Law § 230.05; see Penal Law § 230.02 [1] [b]).
During its case-in-chief, the People offered the testimony of several witnesses who had participated in the undercover operation. The sheriff's investigator testified that, as a member of the FBI's Child Exploitation Task Force, she helped to organize, and ultimately oversaw, the subject undercover operation to "catch people who are trying to engage in crimes against children." The hotel room was equipped with audio recording equipment, and a recording of the interaction with defendant prior to his arrest was played for the jury. Upon his arrival at the hotel room, the sheriff's investigator greeted defendant, while the FBI agent was in the bathroom with the shower running. On cross-examination, the sheriff's investigator stated that defendant did not ask for specific sexual acts while in the hotel room, and, when asked for payment, defendant declined, as he wanted to "wait for the other individual" — the purported 14-year-old female — to emerge from the bathroom. Shortly thereafter, the other officers entered and arrested defendant.
The FBI agent testified that she took the photos posted with the advertisement, which depicted her and the sheriff's investigator as the sisters. The photos were taken in a manner that made the officers appear younger. Defendant's call in response to the advertisement was played for the jury. In the call, the FBI agent told defendant that her sister was 14 years old, but that her sister was "cool," and defendant paused for a few seconds. Defendant asked the FBI agent's age, and she responded that she was 19 years old. He then asked for a location and a price. The FBI agent provided a general location and stated that the price was $200 for "both" females. She then asked what defendant wanted to do upon his arrival, and he asked if "both" would "dress up." She subsequently indicated that she and her sister could do things separate or together.
The State Police investigator testified that he created and posted the advertisement, which stated that the two women were sisters "looking for a good time," and asked interested men to call the provided phone number; ages were not included in the advertisement. The State Police investigator listened to and recorded the conversation as defendant spoke by phone with the FBI agent. He then exchanged multiple text messages with defendant, posing as the 19-year-old female, and asked defendant several times if he was "ok" with one of the females being 14 years old, indicating that the two females were a "package[] deal." He testified that the multiple questions regarding the younger female's age were meant to provide defendant with "an out."
Defendant instead responded by asking for pictures and a location. The State Police investigator sent another message, indicating that, as defendant had not answered the questions regarding the younger female's age, the pair would "pass." Defendant responded "[y]es" to this message. The State Police investigator then asked, "[W]hat do [you] want to do with us"; defendant asked if "both" would "dress up" for him, and said that what would happen "[d]epends on when [he] get[s] there." He asked for a location and confirmed the cost. The State Police investigator responded, "sorry [. . . ] don[']t like depends [. . . ] we have other people who are telling us." To this, defendant stated that he "thought we just [can] have a good time and f**k." Defendant further stated, "I'm real with money and ready now not looking to play games" and asked "[which] one is [the] younger one." The State Police investigator indicated which of the females in the photo was the younger one, reiterated that the pair were a "package deal" and said that they "[would] move on" if defendant was not interested. In response, defendant stated that he was "ready" and asked for the address. Prior to his arrival, defendant asked by text if the females would "both dress sexy." In these text messages, which were admitted into evidence, defendant also asked several times if law enforcement was involved, which the State Police investigator denied.
Defendant was interviewed by law enforcement officers after his arrest. After being advised of his Miranda rights, defendant spoke with the officers, and allowed them to search his cell phone and truck parked outside the hotel. In this interview, which was recorded and played for the jury, defendant confirmed his age and denied possession of child pornography or involvement in sexual acts with minors. A senior investigator with the Albany County Sheriff's Department testified that, upon defendant's arrest, the officers found $200 in cash on defendant's person.
Viewing the record in a light most favorable to the People, the evidence provided a valid line of reasoning and permissible inferences from which a rational juror could conclude beyond a reasonable doubt that defendant agreed to patronize the 14-year-old female for prostitution (see Penal Law §§ 230.05, 230.02 [1] [b]; People v Flower, 173 AD3d 1449, 1452 [2019], lv denied 34 NY3d 931 [2019]). Defendant was proven to be more than 18 years old at the time of the offense and had been informed on multiple occasions prior to his arrival at the hotel that one of the females was 14 years old. After being so advised, defendant's phone call and text messages revealed his desire for both sisters to dress in a certain manner and stated his intent to engage in sexual activity. Defendant arrived at the hotel with $200 in cash on his person, which was the sum discussed on the phone call for both sisters. He then explicitly stated that he wanted to wait for the 14-year-old female to emerge from the bathroom prior to offering payment. Given the testimony that no specific sexual acts were ever discussed and that defendant never expressly agreed to have sexual contact with the 14-year-old, a different verdict would not have been unreasonable (see People v Gill, 168 AD3d 1140, 1142 [2019]; People v Yedinak, 157 AD3d 1052, 1055 [2018]). However, viewing the foregoing evidence in a neutral light and deferring to the credibility determinations of the jury, we find that the verdict is supported by the weight of the evidence (see People v Pearson, 69 AD3d 1226, 1228 [2010], lv denied 15 NY3d 755 [2010]; see also People v Danielson, 9 NY3d at 348; People v Bleakley, 69 NY2d at 495).
Defendant next contends that Supreme Court erred when it declined to charge the jury with the affirmative defense of entrapment.[FN1] "To establish entitlement to an entrapment defense jury charge, a defendant must establish that the trial evidence reasonably and sufficiently supports the inference that he or she was actively induced or encouraged to commit the offense by a public servant . . . and that such inducement or encouragement created a substantial risk that the offense would be committed by a defendant who was not otherwise disposed to commit it" (People v Figueroa, 167 AD3d 1073, 1074 [2018] [internal quotation marks, brackets and citations omitted]; see People v Skervin, 17 AD3d 771, 771-772 [2005], lv denied 5 NY3d 856 [2005]; see also Penal Law §§ 25.00 [2], 40.05). "Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment" (Penal Law § 40.05; see People v Brown, 82 NY2d 869, 871-872 [1993]).[FN2]
Defendant contends that the evidence adduced at trial — including the contents of the advertisement, the addition of the 14-year-old female to the scenario and the contradictory statements as to whether the sisters would do things "together or separate" or as a "package deal" — reasonably and sufficiently supports his entitlement to the affirmative defense of entrapment. However, we note that defendant voluntarily responded to the advertisement, continued responding to text messages despite being told several times that one of the females was 14 years old, asked for a location, asked for both females to dress "sexy," arrived with the agreed-upon amount for both females, and — significantly — declined to offer payment until the 14-year-old emerged from the bathroom (see People v Abbott, 275 AD2d 481, 482-483 [2000], lv denied 96 NY2d 731 [2001]). Accordingly, viewing the evidence in the light most favorable to defendant, as required, we find that no reasonable view of the relevant evidence supports entitlement to the defense (see People v Butts, 72 NY2d 746, 750-751 [1988]). Instead, we find that the trial evidence "demonstrates that [the law enforcement officers] merely afforded defendant an opportunity to commit the offense, which standing alone is insufficient to warrant an entrapment charge" (People v Brown, 82 NY2d at 871-872; see People v Delaney, 309 AD2d 968, 970 [2003]).
Finally, defendant's sentence is neither harsh nor excessive. The record does not indicate that Supreme Court abused its discretion or that extraordinary circumstances exist that would warrant a modification (see People v Reed, 46 AD3d 1221, 1222 [2007]).
Egan Jr., Mulvey, Devine and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, and matter remitted to the Supreme Court for further proceedings pursuant to CPL 460.50 (5).



Footnotes

Footnote 1: Defendant also requested a circumstantial evidence charge, arguing that "any evidence of intent is circumstantial." Supreme Court responded that it did not "believe [there has been] any circumstantial evidence," and so declined to provide that charge, but offered an "expanded intent charge." To the extent that defendant now contends that an evidentiary inference charge should have been given, the claim is unpreserved (see People v Jacobsen, 255 AD2d 951, 951 [1998], lv denied 93 NY2d 972 [1999]), and we decline to disturb the court's determination relative to the circumstantial evidence charge (see People v Stover, 178 AD3d 1138, 1145 [2019], lv denied 34 NY3d 1163 [2020]; see also People v Hardy, 26 NY3d 245, 249 [2015]).

Footnote 2: Contrary to defendant's contention, the record reveals that Supreme Court applied the correct standard in rendering this determination, stating that "a trial [c]ourt must charge the affirmative defense of entrapment when the evidence adduced at trial reasonably and sufficiently supports an inference that he was actively induced or encouraged to commit the offenses by a public official."